IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY SAVAGE,

               Plaintiff,

v.

QUICKEN LOANS AND AFFILIATED
COMPANIES WELFARE BENEFITS PLAN,

               Defendant.

No. 2:18-cv—12075-VAR-SDD
Hon. Victoria A. Roberts

---

Greg M. Liepshutz
Attorney for Plaintiff
LEVINE BENJAMIN, P.C.
100 Galleria Officentre, Suite 411
Southfield, Michigan 48034
(248) 352-5700 Fax (248) 352-1312
gliepshutz@levinebenjamin.com

Patrick W. Spangler
Fabian P. Limon
Attorneys for Defendant
Vedder Price P.C.
222 North LaSalle Street
Chicago, IL 60601
(312) 609 7500  Fax (312) 609 5005
pspangler@vedderprice.com
flimon@vedderprice.com

---

## QUICKEN LOANS AND AFFILIATED COMPANIES WELFARE BENEFITS PLAN'S MOTION FOR JUDGMENT ON THE ADMINISTRATOR'S DETERMINATION

Defendant, QUICKEN LOANS AND AFFILIATED COMPANIES WELFARE BENEFITS PLAN (the "Plan"), by and through its attorneys, Patrick W. Spangler and Fabian P. Limon of Vedder Price P.C., states as follows for its Motion for Judgment on the Administrative Record:

1.     Plaintiff , MARY SAVAGE ("Plaintiff") commenced this action against the Plan on September 6, 2018, by filing her Complaint in this Court.

2.      Plaintiff seeks payment of short-term disability ("STD") benefits under the Plan. The Plan is a welfare plan governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. 1001 *et seq*.

3.      The plan documents grant discretionary authority to the claims administrator to interpret the provisions of the STD Plan, the facts and circumstances of claims for benefits, and to decide questions of fact related to all STD benefit claims.  Therefore, the Court reviews this motion under the arbitrary and capricious standard.

4.      On August 24,  2016, Plaintiff applied for STD benefits under the Plan.  To receive benefits under the Plan, Plaintiff had to establish she met the definition of disability in the Plan, which required her to prove that an injury or sickness precluded her from performing the material and substantial duties of her position as a collateral loan underwriter.

5.      Plaintiff did not meet the definition of disability under the Plan.  In both the initial benefits determination and the Plaintiff's appeal, the claims administrator evaluated Plaintiff's medical records, her physician's comments, and (in the initial benefit determination process)  an independent medical review. None of the information provided by the Plaintiff contained supporting clinical mental status exam findings, diagnostic test results or other forms of medical documentation to verify that the Plaintiff's symptoms were of such severity, frequency and duration that they rendered her unable to perform the duties of her job as a collateral loan underwriter.

6.      The Plan conducted a full and fair review of the Plaintiff's claim and reasonably determined that the Plaintiff failed to qualify for benefits under the Plan. The evidence in the administrative record provides a reasoned explanation for the Plan's decision and the Plan's denial of Plaintiff's claim is supported by substantial evidence.

7.      In reviewing ERISA actions courts will decide, based on the administrative record, whether to affirm the underlying benefits determination.

8.      This Court should accordingly grant judgment to the Plan on the administrative record because Plaintiff did not meet the definition of disability under the STD Plan and the denial was based on a rational process followed by the claims administrator, and was based on substantial evidence.

9.      The Plan submits and incorporates by reference its Brief in Support of its Motion for Judgement on the Administrative Record.

**WHEREFORE**, for the reasons set forth above, the Plan respectfully requests that this Honorable Court enter judgment in its favor against Plaintiff and award additional relief this Court deems appropriate.

Respectfully submitted,

QUICKEN LOANS AND AFFILIATED
COMPANIES WELFARE BENEFITS PLAN

By:   s/ Patrick W. Spangler
       One of Its Attorneys

Patrick W. Spangler
Fabian Limon
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
T:  +1 312 609 7500

Dated: May 20, 2019

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that he caused a copy of the foregoing **QUICKEN LOANS AND AFFILIATED COMPANIES WELFARE BENEFITS PLAN'S MOTION FOR JUDGMENT ON THE ADMINISTRATOR'S DETERMINATION** to be served upon:

Greg M. Liepshutz
Levine Benjamin P.C.
100 Galleria Officentre, Suite 411
Southfield, MI  48034

via the Court's CM/ECF system on this 20th day of May, 2019.

<u>s/ Patrick W. Spangler</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY SAVAGE,

                Plaintiff,

v.

QUICKEN LOANS AND AFFILIATED
COMPANIES WELFARE BENEFITS PLAN,

                Defendant.

No. 2:18-cv-12075-VAR-SDD
Hon. Victoria A. Roberts

---

Greg M. Liepshutz
Attorney for Plaintiff
LEVINE BENJAMIN, P.C.
100 Galleria Officentre, Suite 411
Southfield, Michigan 48034
(248) 352-5700
Fax (248) 352-1312
gliepshutz@levinebenjamin.com

Patrick W. Spangler
Fabian P. Limon
Attorneys for Defendant
Vedder Price P.C.
222 North LaSalle Street
Chicago, IL 60601
(312) 609 7500
Fax (312) 609 5005
pspangler@vedderprice.com
flimon@vedderprice.com

---

## QUICKEN LOANS AND AFFILIATED COMPANIES WELFARE BENEFITS PLAN'S BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE <u>ADMINISTRATIVE RECORD</u>

Defendant, QUICKEN LOANS AND AFFILIATED COMPANIES WELFARE BENEFITS PLAN (the "Plan"), by and through its attorneys, Patrick W. Spangler and Fabian P. Limon of Vedder Price P.C., states as follows for its Brief in Support of its Motion for Judgment on the Administrative Record:

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES ............................................................................................. 1

STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY ........................... 2

INTRODUCTION ........................................................................................................ 3

STATEMENT OF FACTS ............................................................................................. 4

I.      THE PLAN ...................................................................................................... 4

II.     THE INITIAL CLAIM .................................................................................... 5

III.    PLAINTIFF'S APPEAL .................................................................................. 8

ARGUMENT ............................................................................................................. 9

IV.    THE ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW APPLIES .......... 9

V.     THE DENIAL OF PLAINTIFF'S CLAIM WAS NOT ARBITRARY AND
CAPRICIOUS ............................................................................................. 10

       A.    The Plan Reasonably Concluded that the Medical Evidence Failed to
Show Functional Impairment which Materially Limited Plaintiff's Ability
to Perform Her Job ............................................................................. 11

       B.    The Plan Reasonably Relied on the Medical Opinions of a Qualified
Independent Physician ........................................................................ 12

CONCLUSION ........................................................................................................ 14

CHICAGO/#3297484.5

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Cox v. Standard Ins. Co.*,
   585 F.3d 295 (6th Cir. 2009) .................................................................................9

*Farhner v. United Transp. Union Discipline Income Prot. Program*,
   645 F.3d 338 (6th Cir. 2011) .................................................................................9

*Hawks v. Life Ins. of N.A.*,
   2015 WL 9451067 (W.D. Ky. Dec. 23, 2015) ......................................................10

*Kalish v. Liberty Life Assurance Co. of Bos.*,
   419 F.3d 501 (6th Cir. 2005) ...............................................................................10

*Kehrier v. Lumbermens Mut. Cas. Co.*,
   2006 U.S. Dist. LEXIS 75072 (E.D. of Mich. Sept. 29, 2006) .............................11

*Metropolitan Life Ins. Co. v. Glenn*,
   554 U.S. 105 (2008) ..............................................................................................9

*Miller v. Metro. Life Ins. Co.*,
   925 F.2d 979 (9th Cir. 1991) ...............................................................................11

*Perez v. Aetna Life Ins. Co.*,
   150 F.3d 550 (6th Cir. 1998) (en banc) .................................................................9

*Rose v. Hartford Servs. Grp., Inc.*,
   268 F. App'x 444 (6th Cir. Mar. 11, 2008) ..........................................................12

*Schwalm v. Guardian Life Ins. Co. of Am.*,
   626 F.3d 299 (6th Cir. 2010) ............................................................................9, 10

*Williams v. Int'l Paper Co.*,
   227 F.3d 706 (6th Cir. 2000) ...............................................................................10

*Wummel v. Metropolitan Life Ins. Co.*,
   2010 U.S. Dist. LEXIS 52744 (E.D. Mich. May 28, 2010) ..................................13

**Statutes**

Employee Retirement Income Security Act of 1974 .......................................................4

CHICAGO/#3297484.5

## STATEMENT OF ISSUES

1.      Whether the claims administrator acted in an arbitrary and capricious manner when it

denied Plaintiff's claim for STD benefits under the terms of the Plan.

1

## STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY

*Hawks v. Life Ins. of N.A.*, 2015 WL 9451067 (W.D. Ky. Dec. 23, 2015)

*Kehrier v. Lumbermens Mut. Cas. Co.,* 2006 U.S. Dist. LEXIS 75072 (E.D. of Mich. Sept 29, 2006)

*Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008)

*Rose v. Hartford Servs. Grp., Inc*., 268 F. App'x 444 (6th Cir. Mar. 11, 2008)

*Schwalm v. Guardian Life Ins. Co. of Am*., 626 F.3d 299 (6th Cir. 2010)

*Williams v. Int'l Paper Co.*, 227 F.3d 706 (6th Cir. 2000)

CHICAGO/#3297484.5

## INTRODUCTION

This case involves the denial of a claim for short-term disability ("STD") benefits.  Plaintiff Mary Savage ("Plaintiff") is a former employee of Quicken Loans, Inc. ("Quicken Loans"), who worked as a collateral loan underwriter.  On August 24, 2016, Plaintiff submitted a claim for STD benefits based on complaints of stress and anxiety issues associated with an alleged workplace incident.  Plaintiff's claim was reviewed and denied by the Plan's claims administrator.  Plaintiff subsequently filed an appeal.  The claims administrator reviewed all available medical information and retained a physician who independently reviewed Plaintiff's medical information.  Ultimately, the Plan denied Plaintiff's appeal on May 8, 2017.

The Court should grant judgment on the administrative record in favor of the Plan.  The arbitrary and capricious standard of review applies to this case.  For the reasons outlined below, the Plan's denial was based on the determination that Plaintiff failed to meet the definition of "disability" in the Plan due to a lack of medical evidence indicating that any of Plaintiff's symptoms resulted in significant functional impairment.  The opinion of Dr. Espiritu (Plaintiff's treating physician) that Plaintiff was able to perform the functions of her job, is inconsistent with Dr. Espiritu's own treatment records and the Functional Status Evaluation she submitted to the Plan.  Furthermore, the claims administrator's decision is further supported by the opinion of a board-certified psychiatrist and neurologist, who determined that the medical evidence did not provide documentation of severe and incapacitating symptoms of a mental illness that would cause functional impairment.  Accordingly, there is a reasonable explanation for the Plan's decision to deny STD benefits under the terms of the Plan.

CHICAGO/#3297484.5

## STATEMENT OF FACTS

### I.    **THE PLAN**

The Plan is a self-funded welfare plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA").  HA 0003, Ex. 1[1].  The Plan provides a wide variety of welfare benefits, including but not limited to STD benefits.  HA 0003, 11, Ex. 1.  Accordingly, the Plan is considered a "wrap" or an "umbrella" plan, meaning that the Plan is a series of documents consisting of The Quicken Loans and Affiliated Companies Welfare Benefits Plan & Summary Plan Description (HA 0001-63, Ex. 1 (the "Wrap Document") and various "Component Documents," which describe specific benefits in more detail.  HA 0003, Ex. 1.  "Component Document" is defined in the Wrap Document as "a written document identified in the Appendices and incorporated herein by reference."  HA 0004, Ex. 1.  The Appendix to the Wrap Document incorporates by reference the STD Component Document.  HA 0057, Ex. 1.  The STD Component Document is the document located at HA 00064 - HA 0091, Ex. 2 of the Administrative Record.  Under the terms of the Plan, the STD Component Document and the Wrap Document comprise the "plan document" and "summary plan description" for purposes of ERISA.  HA 0003, Ex. 1.

According to the terms of the Plan, a participant is disabled if he or she is "unable to perform the Material and Substantial Duties of [his or her] Own Job."  HA 0070, Ex. 2.  "Material and Substantial Duties" means "responsibilities that are normally required to perform your Own Job and cannot be reasonably eliminated or modified."  HA 0071, Ex. 2.  "Proof" means the evidence in support of a claim for benefits and includes, but is not limited to, the following:  (1) a claim form completed and signed (or otherwise formally submitted) by you claiming benefits; (2) an attending physician's statement completed and signed (or otherwise formally submitted);

---

[1]  All cited materials can be found in the Index of Exhibits, filed herewith.

and (3) the provision by the attending physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.  HA 0072, Ex. 2.

The Plan Administrator[2] has the authority to "interpret the provisions of the Plan and determine any question arising under the Plan, or in connection with the administration or operation thereof including questions of fact."  HA 0013-14, Section 5.2, Ex. 1.  The Plan Administrator has "discretionary authority to interpret the provisions of the Plan and the facts and circumstances of claims for benefits, and to decide questions of fact related thereto."  HA 0014, Ex. 1, Section 5.2(b).  Furthermore, the Plan Administrator has the authority to delegate its duties to "a third-party claims administrator or such other persons as the Plan Administrator deems appropriate."  HA 0041, Ex. 1.

As explained in the Wrap Document, the Plan Administrator delegated its claims administration responsibilities to Liberty Life Assurance Company of Boston ("Liberty" or the "claims administrator"), for purposes of the STD benefits provided under the Plan.  HA 0057, Ex. 1, HA 0065, Ex. 2.  To be eligible for STD benefits, a participant must provide Proof (as defined in the STD Component Document) of disability to Liberty.  HA 0072, Ex. 2.  The Plan states that Proof must be submitted in a manner "satisfactory to Liberty."  HA 0072, Ex. 2.  The STD Component Document reiterates that Liberty "reserves the right to determine if [the] Proof of loss is satisfactory."  HA 0085, Ex. 2.

## II.   THE INITIAL CLAIM

Plaintiff submitted an STD claim to the Plan for an absence from work starting on August 13, 2016.  HA 0103, Ex. 3.  Plaintiff's job duties as a collateral loan underwriter involved

---

[2] Quicken Loans Inc. is the Plan Administrator and Plan Sponsor.

CHICAGO/#3297484.5

reviewing loan applications and collateral information in an office setting.  This position is sedentary and the vast majority of Plaintiff's tasks were completed on a computer or a phone.  In support of her STD claim, Plaintiff submitted a two-sentence note from Dr. Doreen Espiritu, MD ("Dr. Espiritu"), dated August 22, 2016.  Dr. Espiritu's letter stated that Plaintiff should remain off work until September 22, 2016, but included no information about Plaintiff's underlying medical condition or the nature of any physical or mental limitations.  *See* HA 0140, Ex. 4.

On September 2, 2016, the claims administrator contacted Dr. Espiritu and requested all treatment and diagnostic information.  The claims administrator also requested that Dr. Espiritu complete a Functional Status Evaluation report ("FSE").  HA 0118, Ex. 5.  On September 23, 2016, Dr. Espiritu provided a progress note dated August 22, 2016 and the completed FSE.  HA 0103, Ex. 3.  The August 22, 2016 progress note indicated that Plaintiff had no prior psychiatric history and indicated that Plaintiff self-reported that she had crying spells, lack of appetite, and poor sleep.  HA 0155, Ex. 6.  Plaintiff claimed that she "stood up" for a gay co-worker and noted various perceived conflicts at work as a result of this incident.  HA 0155, Ex. 6.  However, the August 22, 2016 progress note did not identify any significant psychiatric symptoms and stated that the "prognosis is good."  HA 0157, Ex. 6.  Dr. Espiritu specifically determined that Plaintiff's attention span, concentration, executive function, and memory were all "normal" as part of her psychiatric and physical examination on August 22, 2016.  HA 0156, Ex. 6.  Dr. Espiritu indicated that Plaintiff was not taking any psychiatric mediations and Dr. Espiritu did not write any prescriptions for any anti-depressant or anti-anxiety medication as part of any course of treatment. HA 0157, Ex. 6.

The FSE completed by Dr. Espiritu was consistent with the August 22, 2016 progress note.

The FSE included a diagnosis of "Adjustment disorder with mixed anxiety and depressed mood." HA 0154, Ex. 7. Dr. Espiritu indicated that the Plaintiff had good hygiene, was appropriately dressed, had normal insight and judgment and was alert and oriented. HA 0154, Ex. 7. Dr. Espiritu did not list any cognitive or mental limitations, and she did not indicate any problems with focus or concentration in the completed FSE. HA 0152-53, Ex. 7. The FSE confirmed that Plaintiff was not taking anti-depressant or anti-anxiety medications. HA 0154, Ex. 7. Despite the lack of any evidence of functional or cognitive impairment, the FSE included a conclusory statement claiming that Plaintiff could not perform any of her job functions due to "fear." HA 0153, Ex. 7.

To ensure a thorough review of Plaintiff's claim, the Plan retained Dr. David Ray to conduct an independent review of Plaintiff's appeal. HA 0103, Ex. 3. Dr. Ray is board certified in psychiatry and neurology. HA 0103, Ex. 3. Dr. Ray reviewed and analyzed the available medical records and physician progress notes. *See* Independent Physician Report at HA 0160-162, Ex. 8. Dr. Ray noted that the only symptoms identified in Plaintiff's records were crying spells, decreased appetite, and difficulty with sleep. *Id.* at HA 0161, Ex. 8. Dr. Ray opined that, based on the medical records, Plaintiff had minimal symptoms of depression. HA 0161, Ex. 8. Dr. Ray noted that a major depressive episode would require at least five vegetative symptoms of depression for a period of two weeks or longer to meet the DSM-V criteria. HA 0161, Ex. 8. Moreover, Dr. Ray determined that Plaintiff was not having severe anxiety symptoms, such as suffering from panic attack symptoms, to the extent that they would affect Plaintiff's capacity to work. *Id.* at HA 0161, Ex. 8.

Dr. Ray opined that feelings of "fear," in themselves, are not indicative of a psychiatric illness unless accompanied by other symptoms that would meet the criteria of panic disorder, post-traumatic stress disorder or other major psychiatric illnesses. HA 0161, Ex. 8. Additionally,

CHICAGO/#3297484.5

Dr. Ray opined that a psychiatric illness would typically be treated with a psychopharmacological intervention such as selective serotonin reuptake inhibitors or serotonin and norepinephrine reuptake inhibitors along with cognitive behavioral therapy.  HA 0161, Ex. 8.  Dr. Ray opined that this lack of psychopharmacological intervention confirmed that Plaintiff was not experiencing a biological psychiatric illness, but was instead reacting to a situational issue at work.  HA 0161, Ex. 8.  Following a complete review of Plaintiff's medical records, Dr. Ray opined that Plaintiff's medical records did not demonstrate a severity of symptoms or intensity of treatment that would support the presence of a psychiatric illness that would lead to physical limitations or preclude Plaintiff from working.  HA 0161, Ex. 8.  On October 14, 2016, the claims administrator denied the claim and determined that Plaintiff was not entitled to STD benefits under the terms of the Plan.  HA 0103, Ex. 3.

## III.   PLAINTIFF'S APPEAL

On March 31, 2017, Plaintiff, through her current counsel, submitted an appeal of her claim.  Plaintiff included a disability note dated February 27, 2017 with her appeal as well as a medical report dated March 22, 2017 from Dr. Espiritu.  HA 0110, Ex. 11.  Similar to the initial letter provided by Dr. Espiritu, the February 26, 2017 note included only the conclusory statement that Plaintiff should remain out of work until April 23, 2017.  HA 0146, Ex. 4.  The March 22, 2017 note from Dr. Espiritu indicated that Plaintiff was first evaluated by Dr. Espiritu on August 22, 2016 due to feeling "very stressed" at work.  HA 0147, Ex. 9.  The note also stated that Plaintiff suffered from crying spells, low appetite, and poor sleep.  HA 0147, Ex. 9.  In contrast with Dr. Espiritu's August 22, 2016 progress note and the FSE, Dr. Espiritu now claimed that Plaintiff was having problems with concentration and memory as of August 22, 2016.  HA 0147, Ex. 9.  Therefore, Dr. Espiritu concluded that Plaintiff's symptoms were severe enough to impair her ability to do her job because her work necessitated focus and concentration.  HA 0147, Ex. 9.

8

However, Dr. Espiritu did not submit an updated FSE or any other evaluation or treatment notes substantiating any physical or cognitive limitations.

On May 8, 2017, the claims administrator denied Plaintiff's appeal. The claims administrator concluded that the medical information provided by Plaintiff did not contain objective medical evidence demonstrating that Plaintiff was unable to perform the material functions of her job. HA 0115, Ex. 10. The claims administrator relied on the lack of objective medical evidence supporting the conclusion that Plaintiff was functionally impaired and Dr. Ray's independent opinion.

## ARGUMENT

## IV.    THE ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW APPLIES

When the plan documents confer discretionary authority on the plan administrator to interpret the plan and decide benefit claims, the district court must apply the arbitrary and capricious standard of review. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008); *Cox v. Standard Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009). Here, the Wrap Document contains clear language granting discretionary authority that requires the application of arbitrary and capricious review. *See Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010) ("[T]he arbitrary and capricious standard applies in this case because the policy grants [the administrator] 'discretionary authority to determine eligibility for benefits and to construe the terms of the plan with respect to claims.'"); *Farhner v. United Transp. Union Discipline Income Protection Program*, 645 F.3d 338, 342–43 (6th Cir. 2011) (same). Moreover, the plan language requiring a participant to provide satisfactory proof to the claims administrator contained in the STD Component Document is independently sufficient to confer discretionary authority in the Sixth Circuit. *See Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998) (en banc) (holding that plan language stating that participant must submit "proof" and "satisfactory evidence" to

9

administrator triggered arbitrary and capricious review); *Hawks v. Life Ins. of N.A.*, 2015 WL 9451067, at *2 (W.D. Ky. Dec. 23, 2015) (plan language required participant to provide "satisfactory proof" to insurance company conferred discretion).

The arbitrary and capricious standard is "the least demanding form of judicial review of the administrative action." *Schwalm*, 626 F.3d at 308 (internal quotation marks and citation omitted). The arbitrary and capricious standard leaves questions of medical judgment, including the weight and sufficiency of the medical evidence, to the discretion of the administrator. *See Id.* ("Although the evidence may be sufficient to support a finding of disability, if there is a reasonable explanation for the administrator's decision denying benefits in light of the plan's provisions, then the decision is neither arbitrary nor capricious.") (citing *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000)). The Sixth Circuit refers to this standard as "highly deferential." *Kalish v. Liberty Life Assurance Co. of Bos.*, 419 F.3d 501, 505–06 (6th Cir. 2005) (internal citation omitted).

## V.   THE DENIAL OF PLAINTIFF'S CLAIM WAS NOT ARBITRARY AND CAPRICIOUS

The Court should grant the Plan's Motion for Judgment on the Administrative Record because the decision to deny Plaintiff's STD benefit claims was rational in light of the terms of the Plan and the lack of objective evidence demonstrating that Plaintiff suffered from any condition that precluded her from performing her sedentary position as a loan underwriter. Furthermore, the claims administrator's decision is also supported by the opinion of Dr. Ray, who determined that Plaintiff did not suffer from a major psychiatric illness and that the evidence in the record failed to demonstrate that Plaintiff was unable to perform the functions of her job.

CHICAGO/#3297484.5

A.     **The Plan Reasonably Concluded that the Medical Evidence Failed to Show Functional Impairment which Materially Limited Plaintiff's Ability to Perform Her Job**

Plaintiff bears the burden of producing evidence to the Plan to prove that she satisfies the Plan's definition of "disability." *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (9th Cir. 1991). To satisfy the definition of "disability" under the terms of the Plan, Plaintiff must establish that she is unable to perform the material and substantial duties of her job. HA 0070, Ex. 2. The denial of benefits is not arbitrary and capricious where the claimant fails to submit objective evidence to support the claim. *Kehrier v. Lumbermens Mut. Cas. Co*., 2006 U.S. Dist. LEXIS 75072 (E.D. of Mich. Sept. 29, 2006) ("As numerous courts have held, an administrator's decision to deny benefits is reasonable and rational in the absence of objective medical evidence to substantiate the claim of disability."). Here, the claims administrator reasonably concluded that Plaintiff failed to provide sufficient "Proof" of disability under the terms of the Plan.

First, while Dr. Espiritu's March 22, 2017 letter claimed that Plaintiff's "problems with concentration and memory" precluded her from working, this conclusion was unsupported by objective medical evidence or "Proof" as defined in the Plan. Neither Dr. Espiritu nor Plaintiff provided any updated treatment notes or any evidence that a physical or cognitive evaluation had been performed to support the March 22, 2017 letter. Indeed, no treatment notes or other objective information (such as an updated FSE) was provided demonstrating that Dr. Espiritu performed a cognitive or physical evaluation after the date of Dr. Espiritu's August 22, 2016 letter.

Second, Dr. Espiritu's March 22, 2017 letter conflicts with the FSE and her own treatment notes. For example, Dr. Espiritu's completed FSE contains nothing in the cognitive limitations section. HA 0153, Ex. 7. The FSE instead stated that Plaintiff demonstrated "sound decision making." *Id*. Moreover, Dr. Espiritu states in the FSE in conclusory fashion that Plaintiff could not perform any of the functions of her job "due to fear," not because of any cognitive deficits in

11

concentration and focus as she later claimed in her March 22, 2017 letter.  HA 0153, Ex. 7.  Indeed, Dr. Espiritu's treatment notes from August 22, 2016 include a specific evaluation of Plaintiff's concentration, executive functioning, and thought processes.  Dr. Espiritu indicated that Plaintiff's cognitive functioning in these areas was "normal" and she did not indicate any significant limitations in concentration and focus.  HA 0156, Ex. 6.

Finally, Plaintiff provided no records related to any treatment or evaluation after the FSE was completed on September 12, 2016.  In the FSE, the only treatment recommendations from Dr. Espiritu appears to be individual psychotherapy with psychologist Carianne McCalden.  However, no records were provided from Ms. Calden's office or by Plaintiff, despite requests from the Plan for this information.  The only records provided after August 22, 2016 were updated two-sentence letters from Dr. Espiritu stating that Plaintiff should "remain out of work" for a specified time. *See* HA 0140-0146, Ex. 4.

For these reasons, the claims administrator did not act arbitrarily and capriciously when it determined that Plaintiff did not provide sufficient objective medical evidence to verify that Plaintiff's symptoms were of such severity, frequency and duration that they rendered her unable to perform her duties for any period after her last day worked.  HA 0115, Ex. 10.  *See Rose v. Hartford Servs. Grp., Inc.*, 268 F. App'x 444 (6th Cir. Mar. 11, 2008) (holding that the plan did not act in an arbitrary and capricious manner by rejecting a conclusory statement by a medical provider that a participant could not work).

B.     **The Plan Reasonably Relied on the Medical Opinions of a Qualified Independent Physician**

The Plan's denial of Plaintiff's STD claim was also reasonable and supported by the evidence because it relied upon the review of a board-certified physician in psychiatry.  *See* Independent Physician Report at HA 0161, Ex. 8.  The Plan's reliance on the opinion of Dr. Ray

12

further supports the Plan's denial of Plaintiff's claim and demonstrates that the Plan engaged in a thorough review of her claim.

As part of the claim review, Dr. Ray evaluated all of Plaintiff's available medical records and concluded that the medical evidence did show that Plaintiff suffered from a psychiatric illness which caused a substantial impairment.  HA 0161, Ex. 8.  Dr. Ray stated that "adjustment disorder, unspecified" would be an appropriate diagnosis, but Dr. Ray opined that Plaintiff's medical records did not demonstrate the severity of symptoms or intensity of treatment that would support the presence of a psychiatric illness that would necessitate restrictions or limitations.  HA 0160, Ex. 8.  Dr. Ray specifically noted that Plaintiff had no history of taking anti-depressant or anti-anxiety mediation for any condition, and Dr. Espiritu did not prescribe medication to Plaintiff as part of any treatment plan.  HA 0161, Ex. 8.  Therefore, Dr. Ray opined that the lack of pharmacological intervention further supported his opinion that Plaintiff was not experiencing a biological psychiatric illness, but was dealing with a situational problem at work.  *Id.* at HA 0161, Ex. 8.

In denying Plaintiff's claim for benefits, the claims administrator relied on the medical records submitted by Plaintiff and the opinion of Dr. Ray, who confirmed a lack of objective medical evidence that demonstrated that Plaintiff's symptoms were of such severity, frequency and duration that they rendered her unable to perform her duties for any period after her last day worked.  HA 0160-162, Ex. 8.  Dr. Ray engaged in a thorough review of Plaintiff's medical records and reviewed the letters and treatment history provided by Dr. Espiritu.

The Plan reasonably relied on the medical opinions of Dr. Ray in denying Plaintiff's appeal.  *See Wummel v. Metropolitan Life Ins. Co.*, 2010 U.S. Dist. LEXIS 52744, at *39 (E.D. Mich. May 28, 2010) (explaining that ERISA administrator "was entitled to focus on the lack of objective evidence of the effect [participant's] headaches had on his functional capacity as a basis

for denying LTD benefits").  Accordingly, the Plan's denial of Plaintiff's claim was not arbitrary and capricious.

## CONCLUSION

Based on the administrative record and for the reasons outlined above, the denial of Plaintiff's claim for STD benefits was not arbitrary and capricious.  Dr. Espiritu's post-hoc claim that Plaintiff suffered from disabling concentration and focus problems is unsupported by any objective medical evidence and conflicts with the FSE completed by Dr. Espiritu and her own treatment records.  Moreover, the Plan reasonably relied on the opinion of an independent physician, who confirmed a lack of incapacitating symptoms of mental illness in the medical records and determined that Plaintiff was capable, based on the available data, of performing the material functions of her job.  The Plan's conclusion was the result of a rational process and is supported by the evidence in the administrative record.  Accordingly, the Court should grant the Plan's Motion for Judgment on the Administrative Record in favor of the Plan.

Respectfully submitted,

QUICKEN LOANS AND AFFILIATED
COMPANIES WELFARE BENEFITS PLAN

By:   s/ Patrick W. Spangler
      One of Its Attorneys

Patrick W. Spangler
Fabian Limon
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
T:  +1 312 609 7500

Dated: May 20, 2019